(97 South. 859)

No. 26022.

## STANDARD OIL CO. OF LOUISIANA v. LOUISIANA PUBLIC SERVICE COMMISSION.

## In re LOUISIANA PUBLIC SERVICE COMMISSION.

(July 11, 1923.   Rehearing Denied Oct. 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Public service commissions ⊚⇒21 — Interference by courts in matters of procedure not authorized.**

Under Const. 1921, art. 6, §§ 4, 5, resort to courts is authorized only for purpose of assailing orders and decrees of Public Service Commission commanding common carrier or public utility to perform or desist from performing some act or thing and not in mere matters of procedure where Commission has jurisdiction, unless Commission ignores or violates fundamental rights, or invades some constitutional guarantee.

2. **Carriers ⊚⇒4—Commission authorized to find pipe line company a common carrier, and render proper orders.**

Under Act No. 76 of 1920, amending and re-enacting Act No. 36 of 1906, if oil company was engaged in transporting oil for hire as common carrier pipe line, the Public Service Commission had right to so find, and to render such orders thereon as it thought proper, and to that end to use processes afforded it by Constitution and laws of the state.

3. **Carriers ⊚⇒10—Commission held entitled to procure information concerning operations of pipe line.**

The Public Service Commission, having instituted investigation as to operation of common carrier pipe line by an oil company and a pipe line company to which it had transferred the pipe line, had right to procure information as to value of the pipe line company's property, and amount of oil transported by it, and its earnings and expenses, and as to cost and value of the pipe line system transferred, and amount of oil transported through it by the oil company, and charges and expenses thereof.

4. **Public service commissions ⊚⇒11—Limited by rules governing district courts with respect to certain matters of procedure.**

While procedure of Public Service Commission is more or less informal, in summoning and compelling attendance of witnesses, swearing them, compelling production of books and papers, taking testimony by Commission and punishing for contempt, it is regulated by rules governing district courts.

5. **Public service commissions ⊚⇒16—May appoint expert to examine books, or fix time and place for their production and examination.**

The Public Service Commission may appoint experts to examine intricate books of account, and, on proper compliance with Code Prac. art. 473, as to description and nature of books and papers to be produced, may fix time and place for their production and examination, within the bounds of reason, and with just consideration for rights and convenience of the parties.

6. **Public service commissions ⊚⇒16—Order for production of books for examination by experts held not unreasonable.**

Order of Public Service Commission for production of books of company having office and domicile in city of Baton Rouge for examination by experts at Commission's office and domicile in that city within five days was not unreasonable.

7. **Public service commissions ⊚⇒16—Must describe books and papers ordered produced.**

In ordering production of books and papers for examination, the Public Service Commission must comply with Code Prac. arts. 140, 141, 473, as to description of the books and papers needed, and cannot by blanket order direct production of all books without description, nor can it act out of mere curiosity.

8. **Public service commissions ⊚⇒21—One ordered to produce books and papers must seek modification of order before resorting to court.**

One ordered by Public Service Commission to produce for examination books and papers not sufficiently described, should first seasonably object before the Commission, and give it opportunity to modify or revise its order before applying for injunction.

9. **Public service commissions ⊚⇒16, 21—Order for production of books and papers held objectionable, and ground for injunction.**

Order of Public Service Commission directing president of company to produce all books, papers, and accounts of any and every nature, relating to and bearing upon a case before the Commission, was objectionable, because not describing the books and papers, and, if not

corrected on proper objection, the courts would have been justified in intervening by injunction to prevent unreasonable search and seizure contrary to the Constitution.

**10. Public service commissions ☞6—Powers of determination as extensive as those of trial courts.**

Within its sphere and as to those matters of which it has jurisdiction, the Public Service Commission's powers of determination are no less extensive than those of the trial courts.

**11. Public service commissions ☞21—When Public Service Commission may be enjoined stated.**

As to matters over which it has no jurisdiction, or in extreme cases where it has jurisdiction, if some fundamental right is invaded or denied, the Public Service Commission may be restrained from acting.

**12. Public service commissions ☞21—Proper court to grant injunction against Public Service Commission stated.**

As a matter of original jurisdiction, the proper court to restrain the Public Service Commission from acting without jurisdiction or in violation of fundamental rights is the district court of East Baton Rouge parish.

**13. Public service commissions ☞9—Not restricted to particular parish in holding sessions or summoning witnesses and requiring production of books.**

Under Const. 1921, art. 6, § 3, the Public Service Commission is not restricted to any particular parish in holding its sessions and conducting its proceedings, or in summoning witnesses, or requiring production of books, papers, etc.

**14. Public service commissions ☞9—Hearing should be held at Commission's domicile, when company domiciled in the same city.**

In investigation of status of oil company as common carrier by pipe line in which production of books, papers, and documents was ordered, the hearing should have been held at Commission's domicile in Baton Rouge, in which city such company was domiciled, instead of requiring it to carry its books and records to New Orleans.

**15. Carriers ☞10—Claim that property had been sold, held not to affect jurisdiction of Public Service Commission.**

Where proceeding for investigation of status of oil company as common carrier by pipe line had been initiated, the company's claim that it had subsequently sold its pipe line property did not deprive Commission of its jurisdiction to determine the question of fact whether such company had been operating a common carrier pipe line, or whether its alleged action was bona fide, especially where it had in effect made the transferee a party, and directed production of books, evidence, etc., affecting it and its relation to the oil company.

**16. Carriers ☞10—Public Service Commission not acting beyond jurisdiction in investigating sale of pipe line.**

In proceeding by Public Service Commission to investigate oil company's status as common carrier by pipe line, where it was claimed that it had sold its pipe line, the Commission was not exceeding its jurisdiction in requiring production of books and papers, bearing on quantity of oil transported by the transferee for the oil company, the charges and tolls exacted therefor, the cost of construction of the lines, and the nature and character of the property.

**17. Public service commissions ☞6—Exceeded jurisdiction in declaring oil refinery a public utility.**

In attempting to declare an oil company's refinery a public utility, the Public Service Commission exceeded its power and jurisdiction, and was properly enjoined.

O'Niell, C. J., dissenting.

Suit by the Standard Oil Company of Louisiana against the Louisiana Public Service Commission. A writ of injunction was granted, and defendant applies for writs of certiorari, prohibition, and mandamus. Writ of mandamus made absolute.

Huey P. Long, of Shreveport, for applicant.

Hunter C. Leake and Lemle, Moreno & Lemle, all of New Orleans, and T. M. Milling and H. C. Walker, Jr., both of Shreveport, for Standard Oil Co. of Louisiana.

DAWKINS, J. On December 8, 1922, the Public Service Commission of Louisiana issued an order or citation "to the Standard Oil Company of Louisiana and other common carrier pipe lines in the state of Louisiana" to show cause, at such time and place as might be thereafter fixed:

(1) Why they should not be adjudged common carriers and a schedule of rates prescribed for the transportation of oil in the state of Louisiana;

(2) Why it and all other common carriers of oil within the state of Louisiana "should not be prohibited from owning or operating, directly or indirectly, any oil well, oil leases or oil holdings in the company engaged in the transportation of oil, and why they should not be compelled to divest themselves of the legal and equitable ownership of any such interest or properties";

(3) Why they should not be prohibited from any unjust discrimination in favor of the carriage, transportation, storage, or delivery of crude oil, in their possession or control, or in which they may be interested directly or indirectly; and

(4) Why rates and charges for the carriage, transportation, storage, and delivery of crude oil in the state of Louisiana should not be prescribed.

On January 22, 1923, the Commission gave notice that on February 7, 1923, at 10 o'clock a. m., in the council chamber at the city hall in the city of New Orleans, it would proceed to consider the case of "Louisiana Public Service Commission v. Standard Oil Company of Louisiana et al., No. 197" (which was also the number borne by the order or citation just above referred to), and would hear the matters and things embraced within the order first mentioned.

On February 7, 1923, the Standard Oil Company of Louisiana appeared and excepted to the jurisdiction of the Commission, upon the grounds:

(1) That its jurisdiction was limited to common carrier pipe lines, of which exceptor was not one;

(2) That defendant was a private enterprise and not so engaged; and,

(3) That it had never so held itself out to the public.

On the same day, it filed with the Commission a petition, in which it set out that on January 13, 1923, it had sold its pipe line property to the Standard Pipe Line Company, Incorporated, and that it was therefore no longer owner thereof; and, in view of the fact that it had at no time engaged in the common carrier pipe line business, asked to be discharged from the proceeding.

On the 14th of April, 1923, the Commission filed a 10 page declaration or finding of fact, which bore the same style (No. 197) as the foregoing proceeding, and in which a purported history of the doings and operations of the Standard Oil Company of Louisiana was set forth. In response thereto, on a date not shown by the record, the Standard Oil Company filed an exception to the said finding of fact or declaration, in which it complained that it had not been given an opportunity to be heard as to the matters therein found and announced, and concluding with the reservation of its right to appeal from any orders or decrees which the Commission might render against it.

On April 25, 1923, the Commission issued another order to the said company, bearing the same style and number, commanding it to show cause at the city of New Orleans, on February 4, 1923, why it should not be declared a public utility and regulated accordingly. At the same time, an order addressed to said company, A. K. Gordon, secretary, and D. R. Weller, president, to appear in New Orleans on May 4th, and produce for the Commission the following:

"(1) Information and data, either oral or in writing or both, showing the number of barrels of oil transported for the Standard Oil Company of Louisiana by the Standard Pipe Line Company, Incorporated, during the month of March, 1923, showing the number of barrels transported from each station to the point of destination; and (2) The number of barrels of oil shipped by the Standard Oil Company from points outside of Louisiana to points of destination in the state for the month of

March, 1923, thus separating the intrastate shipments from the interstate shipments."

And it was further ordered to show cause why it should not be held in contempt if it failed to furnish the data and information therein requested; and further, if it should not allow an inspection of its books and records as per order of the Commission by Mark Wolff, his associates and other agents or employés of the Commission, then that it should also show cause why it should not be adjudged in contempt for such failure.

On April 28th, another order (in No. 197) was issued to the Standard Oil Company to "produce its books and papers which deal with the operation of the refinery at Baton Rouge, so far as the same may show the persons and parties for whom oils have been refined by the said refinery, the amount of oils refined and the charges therefor."

On the same date a further order was issued in which the Commission declared that, finding it necessary to have an inspection of the books and records of the Standard Pipe Line Company, Incorporated, and the Standard Oil Company of Louisiana, and the same being necessary to assist the Commission in prescribing proper rules, regulations and charges, it directed:

"That the Standard Pipe Line Company, Incorporated, and the Standard Oil Company of Louisiana do produce for and allow an inspection of the books and papers of the respective concerns, which have to do, in so far as concerns the Standard Pipe Line, Incorporated, with the value of its property, and amount of oil transported by it, its earnings and expenses, and so far as affects the Standard Oil Company of Louisiana, the books and papers which now show the cost and value of the pipe line system transferred by it to the Standard Pipe Line Company, Incorporated, the amount of oil which it transports through said line, the charges and expenses of the said transporting of the same, so far as may be determined from their records.

"It is ordered that the production of said books and records herein enumerated be made by the said concerns depositing same in the office of the Commission in Baton Rouge within five days from this date, or by producing them at a convenient place satisfactory to Mark Wolff, or to any associate which he designates, said parties being employed by this Commission to make the inspection aforesaid."

On April 30th, the Commission ordered D. R. Weller, president, to appear at the council chamber of the city hall in the city of New Orleans on May 4, 1923, and "to produce all of the books, records and papers and accounts of any and every nature whatsoever relating to and bearing upon this case, which may be in your custody, possession and control."

On May 1, 1923, this suit for injunction was filed, and in it the plaintiff alleged that it was a strictly private enterprise, in no way under the control of the said Commission; that the Commission was without jurisdiction or authority over it; and attached copies of the proceedings, orders, and documents above referred to to its petition. Thereupon, the court below issued a writ of injunction restraining the Commission, as follows:

"Pursuant to an order of the honorable court aforesaid, you, and each of you, are hereby enjoined and restrained from taking any action whatever to declare or declaring the Standard Oil Company of Louisiana a public service corporation; from issuing any orders in regard thereto; from exercising or attempting to exercise any jurisdiction over the Standard Oil Company of Louisiana, its officers, agents or employés; from interfering or attempting in any way to interfere with the property of the Standard Oil Company of Louisiana; *from issuing or attempting to issue any orders. citations, subpœnas, citations, rules, or other decrees to the Standard Oil Company of Louisiana, its officers, agents, or employés, in proceeding entitled Louisiana Public Service Commission v. Standard Oil Company of Louisiana et al., No. 197 of the docket of said Commission; from exercising or attempting to exercise any control over the books, papers or documents of the Standard Oil Company of Louisiana; from interfering or attempting to interfere with any of the officers, agents, or employés of the Standard Oil Company of Louisiana; from securing or attempting in said proceedings to secure from its officers, agents, or*

*employés, any facts, knowledge, or information regarding the business or affairs of whatsoever nature of the Standard Oil Company of Louisiana; and from punishing or attempting to punish any of its officers, agents, or employés for refusing such information, or for disobeying any of the orders, subpœnas, or citations issued in said proceeding,* or attempting to exercise any control or jurisdiction over said officers, agents, or employés in said proceeding; and from proceeding any further in said hearing, and taking or attempting to take any action whatsoever in said proceeding regarding the Standard Oil Company of Louisiana, its officers, agents, and other employés; and you are so enjoined, prohibited, and restrained until the further orders of this honorable court."

We have italicised those portions of the writ which we shall hereafter consider.

Article 6, sections 3 to 9, inclusive, of the Constitution of Louisiana of 1921, creates and defines the powers of the Louisiana Public Service Commission. Section 4 provides:

"The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate, and control all * * * common carrier pipe lines, * * * and other public utilities in the state of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls, or charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.

"The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation, and control by the Commission. The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution.

"The said Commission shall have power to adopt and enforce such reasonable rules, regulations, and modes of procedure as it may deem proper for the discharge of its duties, and it may summon and compel the attendance of witnesses, swear witnesses, compel the production of books and papers, take testimony under commission, and punish for contempt as fully as is provided by law for the district courts."

The first paragraph of section 5 declares that orders affecting rates, tolls, etc., shall go into effect at such time as may be fixed by the Commission, and remain in effect until set aside by the Commission, or the final judgment of a court of competent jurisdiction; provided, that if irreparable injury is shown, a temporary · restraining order, to remain in force until a hearing on an application for injunction, may be granted, but that no injunction shall issue until after five days' notice to the said Commission, enjoining the enforcement of any such rate, toll, charge, etc.

[1] With respect to the right of parties otherwise affected—that is, other than by the fixing of any rate, toll, charge, etc.—to resort to the courts, the provisions of the present Constitution appear to be much more restricted than that of 1898. Compare the second paragraph of section 5 with article 285 of the Constitution of 1898. Paragraph 2 of section 5 provides that "the orders of the Commission shall be enforced by· the imposition of penalties as hereinafter provided, and any party in interest may appeal from *orders* and *decrees* of the Commission to the courts by filing suit, within ninety days from the date of the Commission's order, and not thereafter, against the Commission at its domicile. All cases contesting orders of the Commission" shall be tried by preference over all others, both in· the trial and appellate courts, either in chambers or at term time.

A comparison of the two Constitutions would indicate that the one of 1921 studiously limits a resort to the courts to cases in which the *orders* and *decrees* of the Commission are assailed, and by this is meant orders and decrees which command a common carrier or public utility to perform or to desist from performing some act or thing

as a result of a hearing before the Commission in those cases over which it is given jurisdiction. In mere matters of procedure in such cases, i. e., where it clearly has jurisdiction, it does not appear to have been intended that the courts should interfere, unless the Commission, by its action, should ignore or violate some fundamental right, or invade some constitutional guarantee.

[2] Act No. 76 of 1920, amending and re-enacting Act No. 36 of 1906, being "An act to declare pipe lines common carriers, and to place them under the control and regulation of the Railroad Commission of Louisiana" (of which the Louisiana Public Service Commission is the successor and vested with all of its powers) declares:

"That all pipe lines through which crude petroleum is conveyed from one point in the state to another point in the state are * * * common carriers, as hereinafter defined * * * "

—and places them under the control and subject to the regulation of the Railroad Commission of Louisiana; and by section 3, the Commission would appear to have the power to determine the question of fact as to whether a pipe line is being used in the business of a common carrier of oil, subject to review by the courts, when a decree or order to that effect and directing it to comply with the rules and regulations of the Commission has been made. Therefore, if, as a matter of fact, the Standard Oil Company of Louisiana was engaged in the traffic of a common carrier pipe line, transporting oil for hire, as contemplated by the law, the Commission would have had the right to so find, and to render such orders thereon as it might think proper, and to that end, it has the power to use the processes afforded it by the Constitution and laws of this state.

[3] As is seen from the orders and summonses above quoted and referred to, it had provoked an issue as to the operating of a common carrier pipe line by the Standard Oil Company of Louisiana, as well as by the Standard Pipe Line Company, Incorporated, and had called for information and evidence bearing thereon. In the order of April 28th, it had ordered both companies to produce their books and papers at the Commission's office in the city of Baton Rouge, or some other convenient place, to be examined in order to obtain the information upon which to act in the matter which it had decided to investigate. It certainly had the right to procure this information, provided it acted within the bounds of the law.

[4] It must be borne in mind that the nature and powers of this Commission under the Constitution and laws are quite broad. Its functions are many sided. In a measure, it performs the duties of prosecutor, legislator, and judge, but is required, in the execution of its orders, decrees, and processes, except the mere issuance of notices, citations, etc., to call upon the courts and their officers. Its procedure is necessarily more or less informal, since it has power "to adopt and enforce such reasonable rules, regulations and modes of procedure as it may deem proper for the discharge of its duties," but, in matters of summoning and compelling the attendance of witnesses, swearing witnesses, compelling the production of books and papers, taking testimony by commission, and punishing for contempt, it is regulated by the rules "provided by law for district courts."

[5, 6] We know of no reason which would prevent it from appointing experts for the purpose of examining intricate books of accounting, or any other matters requiring expert knowledge, as may be done by district courts. Neither do we see any objection, upon a proper compliance with the provisions of the Code of Practice (article 473) as to description and the nature of books and papers to be produced, to its naming a time and place convenient to the litigants and the experts for such production and examination, provided it be within the bounds of reason,

and with a just consideration for the rights and convenience of the parties. In the present case, the order to produce for examination by the experts at its office and domicile in the city of Baton Rouge, also the place of business of the defendants, within five days from the date of the order, does not appear to us to have been unreasonable.

[7-9] However, the Commission cannot go beyond the limits provided by the Code of Practice (articles 140, 141, and 473) governing district courts, as interpreted by this court, in the matter of producing books, papers, etc. In other words, when timely and proper objection is made, it "must describe such books, papers and documents as are needed," and cannot by a blanket order direct the production of "all the books without an attempt at description." It cannot go upon a "fishing expedition" out of mere curiosity, but must have a pertinent and serious issue before it, as to which such records are relevant and necessary for determination. State ex rel. Railroad Co., and Refining & Railroad Co. v. Allen, 104 La. 301, 22 South. 114. However, one against whom such a blanket order has been issued should first seasonably urge objection thereto before the Commission, and give it an opportunity to modify or revise the same, so as to confine itself within reasonable bounds. It cannot be assumed that if the Commission's attention had been called to those provisions of law above referred to, and the decisions of this court construing them, it would have ignored the same, and refused to follow a reasonable and lawful course, just as a district court would be compelled to do. Non constat but that the Commission would have followed the law. No such effort was made in this case to obtain relief at the hands of the Commission against these blanket orders, the most objectionable of which was the one addressed to D. R. Weller, president of the Standard Oil Company, commanding the production of "the books, papers, and accounts of any and every nature whatsoever relating to and bearing upon this case, which may be in your custody, possession, or control" at the city of New Orleans. That company immediately applied to the court below, and obtained the broad and sweeping writ of injunction quoted hereinabove. The order of the Commission just referred to was undoubtedly amenable to the objection heretofore discussed, and the Commission would have had to correct it to come within the law, or else the courts would have been justified in intervening to protect the defendant against that unreasonable search and seizure prohibited by the reasonable intendment of the Constitution. In so far as the order, which directed the production of the books and papers of the two companies at the office of the Commission, for the purposes and upon the matters therein stated, was concerned, it may have been that the description and designation given was the best that could have been furnished by it. Plaintiff should have exhausted all available remedies before the Commission before resorting to the courts.

[10-12] Within its sphere and as to these matters of which it is clearly given jurisdiction, the Commission's powers of determination are no less extensive than those of the trial courts; but as to matters over which it has no jurisdiction, it may be restrained from acting, and the proper court to exercise that restraint, as a matter of original jurisdiction, is the district court of East Baton Rouge parish, subject to review by appeal or under the supervisory powers of this court, as the conditions may require. But, in those extreme cases, even where it has jurisdiction, in which some fundamental right is invaded or denied, the courts may intervene to compel a recognition of constitutional guaranties.

[13, 14] In the nature of things, the Com-

mission is not restricted to the parish of East Baton Rouge in summoning witnesses and requiring the production of books, papers, etc., as the district court of that parish would be. The former's jurisdiction is statewide, and its powers extend throughout the state. It cannot be that it could exercise these powers against a litigant domiciled in the parish of East Baton Rouge and not against one in the parish of Caddo, for instance. Neither is the Commission restricted to holding its sessions and conducting its proceedings in any particular parish (section 3 of article 6, Const. 1921); but it would seem that reason, justice, and fair treatment to the parties concerned would dictate that this hearing should be held at the Commission's domicile in Baton Rouge, and that the defendants be not required to carry their books and records to the city of New Orleans.

[15, 16] It is true that the Standard Oil Company claimed, after the proceeding before the Commission had been initiated on December 8, 1922, that it had, on January 13, 1923, sold its pipe line property to another corporation, and asked to be dismissed therefrom; but this did not and could not rob the Commission of its jurisdiction, which had already attached, to determine the question of fact as to whether that defendant was or had been operating a common carrier pipe line; or whether its alleged action was bona fide; all subject, of course, to a review by the courts when the matter had been finally determined by the Commission. Then again, the Commission had, in effect, made the Standard Pipe Line Company, Incorporated, a party to the proceeding, and directed the production of evidence, books, etc., affecting it, and its relation with the Standard Oil Company. Evidence as to the quantity of oil transported for the latter company, the charges and tolls exacted therefor, the cost of construction of said lines, the nature and character of the property, it would seem, was relevant and material to the issues involved in determining the rates, rules, and regulations which were to be imposed upon the business of a common carrier pipe line; and any pertinent information in the possession of the one or the other of these companies the Commission was entitled to have. They could not, by transferring the property from one to the other, draw a dead line beyond which the Commission could not go, and compel it to accept as true and correct the lump sum price which was expressed in the deed. In such circumstances, it would undoubtedly be acting in a matter over which it had jurisdiction, and the courts would not be justified in interfering, merely because of a difference of opinion as to the weight and relevancy of such evidence. However, as to any conclusion or order rendered as a result thereof, the courts are plainly vested with power to review by the Constitution itself.

Since the issuance of the injunction below, the trial judge has been elevated to this court, and the one who was assigned to his place merely sent up the record for our consideration. However, the plaintiff in suit, the party really concerned, has prepared a return to which is attached certain proceedings had after the issuance of the writ before the Commission, affecting the Standard Pipe Line Company, Incorporated, bearing the same number and style, and apparently being a part of the original proceeding against which this suit was instituted; the purpose being to show that the Commission did not consider itself restrained, in so far as the Standard Pipe Line Company, Incorporated, was concerned. However, in that very proceeding (the one had since the issuance of the writ) the chairman of the Commission states that the Commission cannot avail itself of the books and records of the Standard Oil Company of Louisiana, because of

the existence of this injunction. Whatever may have been the intention and purpose of the writ, on its face, it clearly restrains the Commission from "issuing or attempting to issue any orders, citations, subpœnas, rules, or other decrees to the Standard Oil Company of Louisiana, its officers, agents, or employés, in proceeding entitled Louisiana Public Service Commission v. Standard Oil Company of Louisiana et al., No. 197 of the docket of said Commission; from exercising or attempting to exercise any control over the books, papers, and documents of the Standard Oil Company of Louisiana; from interfering or attempting to interfere with any of the officers, agents, or employés of the Standard Oil Company of Louisiana; from securing, or attempting in said proceedings to secure from its officers, agents, or employés, any facts, knowledge or information regarding the business or affairs of whatsoever nature of the Standard Oil Company of Louisiana;" and, in these circumstances, it would seem that any cautious person would at least have been justified in construing it to prohibit the compelling of the production of the books and records of the Standard Oil Company "in said proceeding" (No. 197) for any purpose whatsoever.

[17] Our conclusion is, that in attempting to declare the Standard Oil Company's refinery a public utility, the Commission clearly exceeded its power and jurisdiction, and the injunction was properly issued; but to the extent that the injunction tends to prohibit it from inquiring into matters affecting the question of whether or not the Standard Oil Company was or is operating a common carrier pipe line, or from seeking to obtain evidence for the purpose of acting upon such matters, in controlling the operation of such business by either that company or the Standard Pipe Line Company, incorporated, the writ of injunction was prematurely and improvidently issued; that application should have first been made to the Commission for a modification of its orders, summonses, etc., so as to comply with the law, before applying to the courts. In the interest of orderly procedure before the Commission, and in order that the exercise of its appropriate functions may not be handicapped and embarrassed by useless litigation, a reasonable interpretation and application of the law would seem to have required that course.

For the reasons assigned, the writ of mandamus should be made absolute to the extent of requiring the lower court to dissolve or modify the writ of injunction in this case, so as to permit the Louisiana Public Service Commission to proceed with a determination of any and all questions affecting the operation of a common carrier pipe line by either of the parties to said proceeding No. 197, styled Louisiana Public Service Commission v. Standard Oil Company of Louisiana et al., including the right to compel the production of books, records, papers, and documents, as well as all other relevant evidence bearing upon said issue, all within the limits of the law as hereinbefore pointed out; and it is accordingly ordered and decreed, reserving to the parties the right to further apply to the courts, in event of an abuse by the Commission of its powers.

O'NIELL, C. J., dissents.
BRUNOT, J., recused.

On Application for Rehearing.

PER CURIAM. We think our opinion and decree make it sufficiently clear that the Public Service Commission is not to pursue any further inquiry into the affairs of the Standard Oil Company of Louisiana, in so far as affects the refining and sale of oil; but that it may inquire into the cost of construction and operation of its pipe line, and the quantity of oil transported therein, and the revenues derived therefrom, for the pur-

pose of fixing a fair rate of compensation for such services, whether rendered by the Standard Oil Company, or by the Standard Pipe Line Company, its alleged transferee. And to that end it may require the production of such books of the Standard Oil Company as throw light on cost and operation of the pipe lines, but not such as relate to the refining and sale of oil. And a rehearing is therefore refused.