SANDERS, Justice.
 

 This matter is before us on an appeal by the Louisiana Power & Light Company, an electric utility, from a judgment of the district court affirming Order No. 9981 of the Louisiana Public Service Commission. The Commission’s order in pertinent part ordered Louisiana Power & Light Company to:
 

 “Serve the Elmwood Plantation Apartments with a system of master-metering and on a commercial rate schedule.”
 

 Perrin W. White and James Martin Hill, Jr., owners of the Elmwood Plantation Apartments in Jefferson Parish, have intervened.
 

 The facts pertinent to the present appeal are these: Elmwood Plantation Apartments is a 365-unit complex, constructed in two sections. The first 142 units (East Half) were consrtucted in 1964. Louisiana Power & Light provided electric service through individual meters, each apartment tenant being an individual customer of the utility. Subsequently, when another 223 apartments (West Plalf) were constructed, Elmwood requested Louisiana Power & Light to furnish the electric service for that new section through one meter, sometimes called a master-meter. Under this metering, a single bill was issued for electric service, and the bill went to Elmwood.
 

 In the spring of 1967, Elmwood requested that Louisiana Power & Light convert the electric service being provided the apartments in the East Half from individual metering to a master meter. Louisiana Power & Light rejected Elmwood’s request and, as an alternative, suggested that the individual meters continue but be transferred to the name of Elmwood. Elmwood would then bill each tenant a flat rate, including a charge for electric service.
 

 Louisiana Power & Light required and Elmwood obtained letters of authorization from all tenants of the East Half, requesting the utility to transfer the individual meter from the name of the tenant to the name of Elmwood. After the transfer, the tenants were no longer liable for the payment of individual utility bills to Louisiana Power & Light. Elmwood found this method unsatisfactory and, by letter addressed to the Louisiana Public Service Commission, requested the Commission to investigate the matter and to require Louisiana Power & Light to provide electric service to the East Half on one master meter, in the same manner as it was then providing service to the West Half. Commission Order No. 9981 ensued.
 

 The primary issues are whether the Commission can require Louisiana Power & Light to provide Elmwood with a uniform
 
 *661
 
 system of service under a master meter and whether the order constitutes an unlawful taking or expropriation of the utility’s property.
 

 Article VI, Section 4 of the Louisiana Constitution provides:
 

 “The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, street railroads, interurban railroads, steamboats and other water craft, sleeping car, express, telephone, telegraph, gas, electric light, heat and power, water works, common carrier pipelines, canals (except irrigation canals) and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls or charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided; it is further provided, however, that the Commission shall have no power or authority to supervise, govern, regulate, and control any aspect of sales of natural gas direct to industrial users for fuel or for utilization in any manufacturing process, whether such direct sales are made by natural gas producers, natural gas pipeline companies, natural gas distribution companies, or any other person engaging in such sale of natural gas.
 

 “The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission, provided, however, that the power and authority of the Commission shall not extend to any aspect of direct sales of natural gas to industrial users for fuel or for utilization in any manufacturing process. The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution.”
 

 The Louisiana Public Service Commission thus has broad power to regulate the service of electric public utilities. Its power is sufficiently broad to include the adjustment of electric service to customer needs. The Commission orders, of course, are subject to review by the courts on both the law and the facts. La. Const. Art. VI, Sec. 5; Art. VII, Sec. 10; LSA-R.S. 45:1192.
 

 These orders are accorded great weight and will not be overturned unless shown to be arbitrary, capricious, or abusive of the Commission’s authority. Gulf States Utilities Co. v. Louisiana Pub. Serv. Com’n, 222 La. 132, 62 So.2d 250; Illinois
 
 *663
 
 Central R. Co. v. Louisiana Pub. Serv. Com’n, 224 La. 279, 69 So.2d 43; Rubion Transfer & S. Co. v. Louisiana Pub. Serv. Com’n, 240 La. 440, 123 So.2d 880; Southwestern States Tel. Co. v. Louisiana Pub. S. Com’n, 244 La. 1, 150 So.2d 543; Arkansas & La. Mo. Ry. Co. v. Louisiana Pub. Serv. Com’n, 251 La. 963, 207 So.2d 760.
 

 The record reflects the individual metering of the East Half results in disparate electric systems injurious to Elmwood. The West Half is provided with electric service through a master metering system. Under this system, each tenant pays a flat rate for his apartment, a portion of which is attributable to electricity. Louisiana Power & Light charges Elmwood a commercial rate for the electricity used through this master metering system. Elmwood installed and maintains all necessary electrical distribution lines, transformers and other electrical systems located on the Elmwood side of the electric service delivery-point. The tenants on the East Half also pay a flat rate, but Elmwood is liable for the electricity furnished these apartments through individual meters at a much higher residential rate.
 

 Despite the anomaly of two types of electric service in the same apartment complex at different rates, Louisiana Power & Light contends that using the master-meter system actually converts Elmwood into an electric public utility contrary to law. This position is untenable. LSA-R.S. 45:121 defines an electric public utility as “any person furnishing electric service * * * ” Under the Commission Order, Elmwood furnishes no electric service. Rather, it is a customer of the utility company, receiving and consuming electricity.
 

 Louisiana Power & Light also complains that the Commission Order requires it
 
 to
 
 convert
 
 the
 
 individual
 
 meters to
 
 a master meter and to abandon a portion of the internal distribution system. It contends that this amounts to an expropriation of its property beyond the powers of the Commission. As we view it, the Order decrees no expropriation. No transfer of property ownership takes place under the Order. It is true the Order requires changes, conversion of the meters and abandonment of segments of the internal distribution system. The record, however, reflects that Elmwood stands ready and willing to reimburse the utility for its loss of initial installation costs and reasonable expenses in complying with the Commission Order.
 

 In technical matters, such as the method of electric service litigated in this case, courts should act slowly in substituting their judgment for that of the Louisiana Public Service Commission. The record, in our opinion, discloses no abuse of power. We conclude it supports the order of the Commission.
 

 For the reasons assigned, the judgment is affirmed at appellant’s cost.