264 So.2d 905

CENTRAL LOUISIANA TELEPHONE CO.,
Inc., Relator,

v.

LOUISIANA PUBLIC SERVICE COM-
MISSION, Respondent.

No. 52434.

June 29, 1972.

Dissenting Opinion July 27, 1972.

Charles H. Ryan, Monroe, Victor A. Sachse, Baton Rouge, for relator.

Joseph H. Kavanaugh, Marshall B. Brinkley, Baton Rouge, for respondent.

TATE, Justice.

The central issue is whether, pending judicial review, the courts may enjoin enforcement of an order of the Public Service Commission which requires a utility to provide certain service. The district court held that our state constitution does not permit the courts to afford such interlocutory injunctive relief, except in rate cases. We granted supervisory writs to review this holding. 261 La. 1038, 262 So.2d 33 (1972).

The plaintiff ("Central") is a telephone utility regulated by the Louisiana Public Service Commission. Central sues (1) for review of an order requiring it to reopen a telephone business office at Glenmora and (2) for a preliminary injunction to restrain the commission from enforcing this order or applying any sanction [1] against Central

1. The Commission is authorized to punish for contempt of its order. La.Const. Art. VI, Section 4; La.R.S. 45:1186 (1950). Monetary penalties may also be recovered for violation of Commission orders. La.Const. Art. VI, Section 6; La.R.S. 45:1197–99.

for refusing to comply with it, pending judicial review of it.

The trial court's return shows that, despite allegations of irreparable injury, it refused to consider this request for interlocutory injunctive relief. It refused to do so, in the belief that Article VI, Section 5 of the Louisiana Constitution prohibits interlocutory injunctive relief, pending judicial review, in non-rate cases such as the present.

The first paragraph of this constitutional provision (set forth in full in footnote 2 below[2]) provides that Commission orders fixing rates or charges shall go into effect on the date fixed by Commission unless and until set aside by the Commission or a final judgment of the courts. The

paragraph concludes that, however, in such cases, restraining orders and interlocutory injunctions may issue under certain conditions. This paragraph applies *only* to rate cases.

The second paragraph of this constitutional provision (see footnote 2) further provides for appeal of orders of the Commission by suit filed within ninety days. This provision for judicial review applies *both* to rate and to non-rate cases. The paragraph provides for summary and preferential treatment by trial and appellate courts of these suits for judicial review. The paragraph is silent, however, as to injunctive relief being available pending judicial review, i. e., before a final court judgment.

2. La.Const., Art. VI, Section 5 (1921) provides, in full:

"*Public service commission; orders; effective date; injunction; review; enforcement; appeals*

"Section 5. The orders of the Commission fixing or establishing any rate, fare, toll or charge for any commodity furnished, service rendered, or to be rendered, by any common carrier or public utility named herein, or hereafter placed under the control of said Commission, shall go into effect at such time as may be fixed by the Commission, and shall remain in effect and be complied with, unless and until set aside by the Commission, or by a final judgment of a court of competent jurisdiction, in a suit setting aside and annulling the same; provided, however, that if an interlocutory injunction is applied for, and if of opinion that irreparable loss or damage would result to plaintiff unless a temporary restraining order is granted, the judge of the district court having jurisdiction may grant

a temporary restraining order, to remain in force only until the hearing and determination of the application for an interlocutory injunction; provided, that no injunction shall issue until after five days notice has been given the Commission.

"The orders of the Commission shall be enforced by the imposition of penalties as hereinafter provided, and any party in interest may appeal from orders and decrees of the Commission to the courts by filing suit, within ninety days from the date of the Commission's order, and not thereafter, against the Commission at its domicile. All cases contesting orders of the Commission, both in the trial and appellate courts, shall be tried summarily and by preference over all cases, and may be tried either in chambers, or at term time. Appeals from decisions of the trial court shall be direct to the Supreme Court, and shall be returned within ten days after the granting of the appeal. When the Commission appeals no bond shall be required."

### The Commission's Construction of Section 5

The trial court accepted the Commission's argument that, since Section 5 expressly provides for interlocutory injunctive relief in rate cases, but does not do so for non-rate cases, such injunctive relief is only available for review of the *rate* determinations by the Commission.

The trial court held that, under the principle inclusio unius est exclusio alterius (The inclusion of one is the exclusion of the other), the constitutional intent was to exclude injunctive relief, before final judgment, during the pendency of any court action to review non-rate orders of the Commission, such as the present. The intent thus demonstrated, it is argued, is to effectuate administrative regulation by the Commission ordering utilities to provide services, without affording the regulated utilities the opportunity to disrupt and cease providing needed utility services through judicial proceedings delaying immediate enforcement.

There is much force to this construction of Section 5. The trial court assigned persuasive reasons for finding the constitutional intent to be to this effect.

Under this construction, a utility or other person regulated by the Commission might be forced under penalty of immediate punishment (see footnote 1) to obey immediately an order of the Commission, which, upon judicial review, is found to be unlawful or improper. There is, under this construction, no way to secure judicial relief temporarily suspending even an order of the Commission unlawful on its face, unless the same Commission which issued the unlawful order agrees to its suspension pending judicial review.[3]

### The Reasons for a Contrary Construction

While conceding the forcefulness of the trial court's reasoning, a majority of this court has nevertheless concluded that Section 5 should not be thus narrowly construed. In reaching this conclusion, we take into consideration (1) our constitution as a whole, (2) general principles of statutory construction pertaining to state constitutions, and (3) the legislative history of Section 5:

■ (1) Our state constitution in its entirety expresses repeatedly the principle that every person shall have an adequate remedy in the courts and shall be entitled

3. A railroad, for instance, might be required to construct immediately an expensive crossing, although, upon judicial review, the courts determine that such crossing was not necessary, cf., Kansas City Southern Railway Co. v. Louisiana Public Service Comm., 254 La. 160, 223 So.2d 132 (1969). Again, a less conscientious Commission than we have presently might illegally authorize the immediate cessation of telephone service to a locality, leaving the consumers no relief except reversal months later on judicial review of the order which illegally deprived them of a necessary service of the utility.

to judicial protection against unlawful acts. La.Const. Art. 1, Sections 2–6; Art. 7, Sections 2, 10, 29. This fundamental attribute of a government of law (rather than of the possible whim of administrative officials) should not, it seems to us, be deemed negated by an ambiguous provision as to a particular narrow issue, at least in the absence of express wording requiring such construction.

■ (2) The general rule, in construing a state constitution, is that the legislature is supreme except when specifically restricted by that constitution; therefore, the legislature is authorized to provide rights and remedies unless they are prohibited by or contrary to that constitution. Womack v. Louisiana Comm. on Governmental Ethics, 250 La. 833, 199 So.2d 891 (1967); Plebst v. Barnwell Drilling Co., 243 La. 874, 148 So.2d 584 (1963) and decisions cited therein. (The reasoning is that the power of the people of a state, exercised through the legislature, is plenary except where specifically restricted by the state or federal constitutions.)

Thus, in the absence of specific constitutional prohibition, we should not hold that the power of the courts to issue a preliminary injunction during the pendency of a court action, upon a showing of irreparable injury and upon the party furnishing bond and after hearing, recognized by La. C.C.P. Arts. 3601–13, is not available to the present petitioners.

(3) Further, the legislative history of Section 5 does not indicate any express constitutional intent to deprive the courts, in non-rate cases, of the power to issue preliminary injunctions in appropriate instances.

Sections 5 and 6 of Article VI of the Constitution of 1921 were derived from Articles 285 and 286 of the Constitution of 1898, and an amendment of Article 286 by Act 14 of 1907, effective in 1908. (The Constitution of 1913 included them verbatim as Article 285 and, as amended in 1908, Article 286.)

As first interpreted, Commission orders or rate determinations were suspended, without injunction, by the mere filing of a suit for judicial review of them. Kansas City S. Ry. Co. v. Railroad Commission, 106 La. 583, 31 So. 131 (1902).[4] How-

4. This decision held that an injunction against enforcement of a Commission order did not lie, essentially because (under its construction of Articles 285 and 286) the remedy provided by the constitution was to raise the defense of any illegality of the order in a suit by the Commission to collect a fine for disobeying it. The apparent intent was to hold that Commission orders or rate determinations were suspended in effect by suits to review them, see McAdams v. Wells Fargo & Co. Express, 139 La. 681, 71 So. 945 (1916), so therefore injunctions were unnecessary and did not lie. In the present case, the Commission relies upon certain language in the cited Kansas City opinion to the effect that injunction does

ever, following the 1908 amendment to Section 286, the courts held that rate determinations (and, by implication, other orders as well) went into effect at the time provided by the Commission, unless an injunction was secured to suspend their effect. McAdams v. Wells Fargo & Co. Express 139 La. 681, 71 So. 945 (1916), see also intermediate court opinion at 13 Orl.App. 81 (1915).

From 1908, on, the Legislature has by statute provided that non-rate orders, as well as rate determinations, are operative at the time fixed by the Commission, unless changed or set aside by a court of competent jurisdiction. Act 171 of 1908, Section 1; now La.R.S. 45:1191 (1950). Despite such a provision, the power of the courts was recognized to provide interlocutory injunctive relief suspending in effect Commission orders and rate determinations, just as in other non-administrative instances where the legislatively-recognized remedy of injunction was available in cases of irreparable injury. McAdams v. Wells Fargo & Co. Express, 139 La. 681, 71 So. 945 (1916).

We see no reason to ascribe any intent by the constitutional revision of 1921 to alter the former constitutional meaning that interlocutory injunctive relief was available in both rate and non-rate cases. (We include as Appendix to this opinion a detailed discussion of the wording of the constitutional provisions and the decisions cited.)

*Summary*

No one of the reasons above relied upon (i. e., construing our constitution as a whole; the limiting construction required as to a state constitution; and the legislative history of Section 5) might by itself support the construction we reach. But in cumulation they persuade us that the better construction is:

█ Section 5's express recognition, for historical reasons, of interlocutory injunctive relief in rate cases was not intended to exclude similar relief in non-rate cases. Such relief was recognized as available by pre-1921 interpretations of the similar provisions of prior constitutions, when permitted by our ordinary procedural law, upon proper showing.

---

not lie to restrain a state officer from performing his duties (i. e., in that case, filing suit to collect a fine), when full provision is made to review his action by other means (i. e., in that case, raising the defense in the Commission's suit to collect the fine). The language may have been appropriate in the context of the 1898 provisions and the particular litigation with which concerned, but it

has no relevance to the present litigation, concerning an entirely different issue, nor to the present differing constitutional provisions. See also the holding in *McAdams* that any such purport of the *Kansas City* decision was legislatively overruled by the 1908 amendment to Section 286. 139 La. 681 at 684–685, 71 So. 945.

We see no reason to conclude that the 1921 Constitution intended to provide otherwise. Thus, interlocutory injunctive relief is an available procedural remedy, just as in cases not involving the Commission, cf., West v. Winnsboro, 252 La. 605, 211 So.2d 665 (1968).

Adverting to some of the claims made in argument, however, we should note:

Such interlocutory injunctive relief is available only upon showing of irreparable injury and upon furnishing of adequate security. La.C.C.P. Arts. 3601, 3610. In considering whether a prima facie case is made for such interlocutory relief, consideration should be given to the principle that orders of the Commission are entitled to great weight and are not to be overturned unless shown to be arbitrary, capricious, or abusive of the Commission's authority. Louisiana Power & Light Co. v. Louisiana Public Service Commission, 256 La. 656, 237 So.2d 673 (1970). Further, the legislative intent is that ordinarily orders of the Commission go into effect on the date determined by it. La.R.S. 45:1191.

These principles indicate that such interlocutory injunctive relief as to Commission orders is to be afforded sparingly and only in exceptional instances, where there exists a reasonable possibility that the order might ultimately be annulled or modi-

fied on judicial review and where no other administrative or judicial remedy may avert the irreparable injury threatened. Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935). Cf., South Central Bell Tel. Co. v. Louisiana Public Service Commission, 256 La. 497, 236 So.2d 813 (1970) and Louisiana Gas Service Co. v. Polaris Corp., 254 La. 297, 223 So.2d 810 (1969).

On the other hand, upon proof of this exceptional showing, interlocutory injunctive relief may be available. Standard Oil Co. v. Louisiana Public Service Commission, 154 La. 557, 97 So. 859 (1923). However, pending the judicial review of final orders of the Commission, the prima facie case of irreparable injury may properly be weighed in the light of the inconvenience to the public by staying the order pending judicial review, as balanced against the irreparable damages and injuries which may result to the complaining party from immediate enforcement of the Commission order. Southern Bell Telephone and Telegraph Co. v. Louisiana Public Service Commission, 183 La. 741, 164 So. 786 (1935); see also 2 Cooper, State Administrative Law 629–30 (1965).

In the present case, thus, we expressly do not hold that the plaintiff Central is entitled to interlocutory injunctive relief solely on the basis of the allegations of its

petition. Central may possibly, at the trial of its rule for preliminary injunction (pending final judicial review), show both irreparable injury, as above determined, and also a reasonable possibility that the Commission's order may be so arbitrary under the law or the facts as to justify its eventual annulment upon judicial review.

Our narrow holding is, however, only that Central is entitled to its day in court on the question of whether or not it is entitled to interlocutory injunctive relief.

### Decree

For the reasons assigned, we reverse the ruling of the trial court which annulled and recalled its rule to show cause why a preliminary injunction should not issue; we remand this case for further proceedings consistent with the views expressed herein.

Reversed and remanded.

## APPENDIX

### Legislative History of Section 5, Article VI, Louisiana Constitution of 1921

Art. VI, Section 5, of the Louisiana Constitution of 1921 is derived from predecessor provisions of the Constitutions of 1898. Initially, Article 285 provided for judicial review of orders of the regulatory commission (then known as the Railroad, etc. Commission), including of rates fixed by it, in terms of essential substance similar to the judicial review now provided by the second paragraph (see Footnote 2 in text above) of Section 5. Article 286 provided for fines for overcharges or violation of Commission orders, with the proviso that no such fines should be incurred, if the rate fixed or the order were contested under Article 285, until after the contestation was finally decided by the courts ("and then only for acts subsequently committed").[1]

---

1. Section 286 provides in full:

   "If any railroad, express, telephone, telegraph, steamboat, or other water craft, or sleeping car company, subject hereto, directly or indirectly, or by any special rate, rebate, or other device, shall intentionally charge, demand, collect or receive from any person, firm or corporation, a greater or less compensation for any service rendered by it, than it charges, demands or receives from any other person, firm or corporation, for doing a like and contemporaneous service, or shall violate any of the rates, charges, orders or decisions of said Commission, such railroad, steamboat or other water craft, express, telegraph, telephone or other company, shall forfeit and pay to the State not less than one hundred dollars, nor more than five thousand dollars, to be recovered before any court of competent jurisdiction, at the suit of said Commission, at the domicile of the Commission or of the company, or at the place where the complaint arises, at the option of the Commission. *Provided, that whenever any rate, order, charge, rule or regulation of the Commission is contested in court, as provided for in Article 285 of this Constitution, no fine or penalty for disobedience thereto, or disregard thereof, shall be incurred until after said contestation shall have been finally decided by the courts, and then only for acts subsequently committed.*

   "The power of the Commission shall affect only the transportation of pas-

One of the first cases arising under these provisions was decided in Kansas City S. Ry. Co. v. Railroad Commission, 106 La. 583, 31 So. 131 (1902). There, the Commission fined the railroad $1,000 for removing a spur track without the prior consent of the Commission. The railroad sued to enjoin the Commission from bringing suit to collect the fine. This court held that injunction against the Commission did not lie, essentially because under the constitution (Section 286) the remedy was to raise the defense of illegality of the order in a suit brought by the Commission to collect the fine. 106 La. 585–586, 31 So. 131. The apparent intent of this opinion, authored by Chief Justice Breaux, was to hold that Commission orders or rate determinations were suspended in effect by suits to review them, whether or not enjoined (so therefore no injunction would lie). McAdams

v. Wells Fargo & Co. Express, 139 La. 681, 71 So. 945 (1916).

Article 286 was then amended, effective after vote of the people in 1908. See Act 14 of 1907. The amendment specifically repealed the proviso (italicized in Footnote 1 of this appendix) relied upon in *Kansas City*, and it substituted for it two provisos: (1) the "first proviso" being that *rates* fixed by the Commission should go into effect at a time fixed by the Commission, until set aside by final judgment of the court on judicial review [2]; and (2) the "second proviso" being that, when rates or orders of the Commission were contested in courts but finally upheld, the contestant utility should pay a fine of from $10 to $50 per day for each day the rate or order "may have been suspended by such suit".[3]

---

sengers, freight, express matter, and telegraph and telephone messages, between points within this State, and the use of such instruments within this State." (Italics ours.)

The first sentence is now in substance Section 6 of Article VI, La.Constitution of 1921.

2. "Provided, that every order or decision of the Commission, fixing and establishing a rate or charge for the transportation of passengers or freight, or for the transmission of messages or conversations by telephone or telegraph, within the State, shall go into effect at such time as may be fixed by the commission, and shall *remain in effect and be complied with* unless and until set aside by the commission, or by a final judgment of a court of competent jurisdiction, rendered on

final trial in a suit to set aside and annul the same."

This provision, in essential substance and language, is incorporated in the 1921 Constitution as the first sentence of the first paragraph of Section 5. See Footnote 2 of text above.

3. "Provided, that whenever any rate, charge, rule, regulation, order or decision, of the Commission, is contested in court, as provided by this Constitution, or by any amendment thereto, and the same is maintained on final trial, by a court of competent jurisdiction, the railroad, express, telephone, telegraph, steamboat or other water craft, or sleeping car company, or corporation, contesting the same, shall forfeit and pay, to the State of Louisiana, the sum of not less than Ten ($10.00) Dollars nor more than Fifty

These new provisos came before the courts in McAdams v. Wells Fargo & Co. Express, 139 La. 681, 71 So. 945 (1916), see also intermediate court opinion at 13 Orl. App. 81 (1915). There, the Commission had reduced express rates, and Wells Fargo had filed suit to annul the order so doing. On the theory that its suit suspended the order, even though no injunction had been secured, the express company still charged the old rates. The suit contesting the order was eventually dismissed.[4]

Specifically noting the 1908 constitutional amendment had overruled any implication to the contrary in Kansas City S. Ry. Co. v. Railroad Commission, this court held in *McAdams* that, with regard to the second proviso (see Footnote 3): "when it speaks of an order being suspended by suit, [it] necessarily contemplates that such a thing as the suspending of an order by suit is

possible, notwithstanding the expressions of the first proviso [i. e., that rate determinations are effective immediately; see Footnote 2 of appendix]; and no other way is known by which such suspension could be effected than by an injunction. The conclusion is therefore irresistible that this second proviso contemplates that an injunction will lie." 139 La. 684–685, 71 So. 946.

In summary, then, as thus interpreted, Articles 285 and 286 of the Constitution of 1898, as amended in 1908 (and as re-adopted with such amendment as Articles 285 and 286 of the 1913 Constitution) provided for (a) judicial review of Commission rate determinations and also of other orders, (b) for rate determinations to go into immediate effect, unless suspended by injunction, and (c) for all other orders to

($50.00) Dollars per day, for each day of the rate, order, charge, rule, regulation, that the putting into effect and operation or decision, of the Commission may have been suspended by such suit, to be found and adjudged by the court in which such suit may be brought and, in all such cases, the said court shall, in its judgment, maintaining the said rate, charge, rule, regulation, order, or decision enter up a decree and judgment against the plaintiff therein, condemning such plaintiff to pay to the State of Louisiana the amount of the said penalty or forfeiture so found and adjudged by it, which amount, after deducting therefrom, the attorney's fees provided by Art. 288 of this Constitution, shall, when collected, be paid into the State Treasury, for account of the General School Fund of the State."

The Constitution of 1921 provides only that a utility violating any of the Commission's rates or orders shall forfeit a penalty of between $100 and $5,000, as fixed by the Commission, to be recovered before any court of competent jurisdiction at the domicile of the Commission. Art. VI, Section 6. This, in substance, is what is provided by the first paragraph of Article 286 (see Footnote 1 of appendix), so therefore this "second proviso" was repealed by the 1921 Constitution.

4. The *McAdams* suit was by a shipper to recover the overcharge. The courts held that, absent an injunction, the new lower rates went into effect immediately, so therefore the shipper was entitled to a refund of the overcharge.

go into immediate effect also, unless suspended by injunction.

Since the "second proviso" (see Footnote 3) applies to fines for violation of both rate-determinations and *also* of other orders, under the *McAdams* reasoning and the wording of the proviso, any refusal by a utility to comply immediately with *either* a rate determination *or* of a non-rate order was at its peril of being held liable for penalties for non-compliance during the pendency of unsuccessful judicial review. *However, under McAdams, both rate and non-rate orders could be suspended in effect by an injunction during the pendency of judicial review.*

The Constitution of 1921 adopted the essential substance of Articles 285 and 286 of Article VI, Sections 5 and 6.

The first paragraph of Section 5 (see Footnote 2 in text) incorporated the "first proviso" of the 1908 amendment to Section 286 (see Footnote 2 in appendix) providing that rate determinations go into effect when provided by the Commission; but adding, in accord with the *McAdams* decision, that upon showing of irreparable injury interlocutory injunctive relief might be afforded pending judicial review. The second paragraph of Section 5 incorporated former Section 285. Section 6 incorporated the first sentence of Section 286 (see Footnote 1 in appendix). However, the provisions of the "second proviso" of the 1908 amendment (see Footnote 3 in appendix) were not re-enacted and were therefore repealed.

While it is arguable that the repeal of the "second proviso" of the 1908 amendment (Footnote 3 of the appendix) may have indicated an intent no longer to permit suspension of non-rate orders, the actual purport of the proviso thus repealed was only to provide for penalizing a utility for non-compliance with an order during the pendency of an unsuccessful judicial review.

Interlocutory injunctive relief as to non-rate orders was assumed by *McAdams* to have been available all along upon proper showing. The only question in *McAdams* was whether the 1908 "first proviso", stating that rate determinations should be effective immediately or as ordered by the Commission (see Footnote 2 of appendix) prevented such relief being afforded in rate cases (only). We find no implication in *McAdams* or the earlier constitutional provisions that interlocutory injunctive relief was not available as to non-rate orders independently of any recognition of it by this "second proviso" now repealed.

SUMMERS, Justice (dissenting).

For a number of years prior to this proceeding, Central Louisiana Telephone Co., Inc., operated a telephone business office at Glenmora, Rapides Parish. Without filing an application or seeking authority from the Public Service Commission, Central closed its office at Glenmora, discontinued this

specific service to its customers in the area and notified the Commission of its action.

The Commission gave notice and held a public hearing at which time Central was given an opportunity to show cause why it should not be required to reopen its Glenmora business office. After the hearing, the Commission rendered its order on February 12, 1972, requiring that Central reopen the Glenmora office.

Central then filed a petition in the Nineteenth Judicial District Court attacking the validity of the Commission's order. The petition also sought a preliminary injunction restraining the enforcement of the Commission's order and enjoining the imposition of penalties for noncompliance with the order until such time as the validity of the order was finally adjudged. The trial court refused to issue the preliminary injunction prayed for, and upon application to this Court by Central, writs to review the trial court action were granted under our supervisory jurisdiction.

The Commission does not contest Central's petition seeking a review of the validity of its order. To the contrary, it stipulates its willingness to expedite review of the order's validity under the summary process provided by law. The Commission objects, however, to the attempt to enjoin the effect of its order while these proceedings for review are in progress. It must be kept in mind that the order in contest here does not involve rates, fares, tolls or charges.

The process established by law for review of Commission orders is principally contained in Article VI, Section 5 of the Constitution and Sections 1191 and 1192 of Title 45 of the Revised Statutes.

The Constitution provides:

Public service commission; orders; effective date; injunction; review; enforcement; appeals.

Section 5. The orders of the Commission fixing or establishing any rate, fare, toll or charge for any commodity furnished, service rendered, or to be rendered, by any common carrier or public utility named herein, or hereafter placed under the control of said Commission, shall go into effect at such time as may be fixed by the Commission, and shall remain in effect and be complied with, unless and until set aside by the Commission, or by a final judgment of a court of competent jurisdiction, in a suit setting aside and annulling the same; provided, however, that if an interlocutory injunction is applied for, and if of opinion that irreparable loss or damage would result to plaintiff unless a temporary restraining order is granted, the judge of the district court having jurisdiction may grant a temporary restraining order, to remain in force only until the hearing and determination of the application for an inter-

locutory injunction; provided, that no injunction shall issue until after five days notice has been given the Commission.

The orders of the Commission shall be enforced by the imposition of penalties as hereinafter provided, and any party in interest may appeal from orders and decrees of the Commission to the courts by filing suit, within ninety days from the date of the Commission's order, and not thereafter, against the Commission at its domicile. All cases contesting orders of the Commission, both in the trial and appellate courts, shall be tried summarily and by preference over all cases, and may be tried either in chambers, or at term time. Appeals from decisions of the trial court shall be direct to the Supreme Court, and shall be returned within ten days after the granting of the appeal. When the Commission appeals no bond shall be required. (La.Const. Art. 6, § 5).

In addition to the foregoing explicit declaration in the Constitution that orders fixing or establishing rates, fares, tolls or charges "shall go into effect at such time as may be fixed by the Commission, and shall remain in effect and be complied with, unless and until set aside by the Commission, or by a final judgment of a court of competent jurisdiction", the legislature has ordained a like effectiveness with respect to orders of the Commission generally:

: All orders of the commission, made and entered upon its records, respecting rates, charges, rules, regulations and classification, affecting any railroad, express, telephone, telegraph, steamboat, or other water craft, or sleeping car company, or other person, under its jurisdiction or control, or requiring the performance of any act by any such person, shall be operative and in full force and effect from the time fixed for them to become effective by the commission unless such orders are thereafter changed, altered, modified, or set aside by a court. (La. R.S. 45:1191).

When read together these two provisions make it clear that all orders of the Commission are effective when made so by the Commission until "changed, altered, modified, or set aside by a court." However, Article VI, Section 5 of the Constitution creates an exception with respect to Commission orders involving rates, fares, tolls or charges. As to these latter orders the Constitution permits an interlocutory injunction to issue, when "irreparable loss or damage" will result. In this latter case an order restraining enforcement may be entered "only until the hearing and determination of the application for an interlocutory injunction."

Orders affecting rates, fares, tolls or charges are permitted to be enjoined under the exception contained in Article VI, Section 5 of the Constitution for obvious reasons. An order to upgrade or provide service which entails an expenditure by the

utility leads in the orderly course of things to an opportunity for the utility to request reasonable rates and charges on its expanded investment, if rates or operating ratios should fall below a reasonable level. Thus the utility is compensated for its expenditure. There is no irreparable damage in such a case. Should the utility be allowed to refuse to comply with the Commission order to make the investment or provide the service in the first place, it would have within its power to select those it would serve—at least temporarily. In many instances the service ordered by the Commission will not, in the public interest, permit delays in compliance. In the context of this case, it is not within the power of Central to serve only the good areas of the state (urban) and refuse service to the bad (Glenmora-rural).

On the other hand, where rates are involved, since there is no means provided by law for the Commission to give retroactive rate increases, an order improperly reducing rates or an order denying a warranted increase may effectively take the utility's property without affording a means for compensation for the taking. La.Const. Art. 1, § 2; South Central Bell Telephone Co. v. Louisiana Public Service Comm., 256 La. 497, 513, 236 So.2d 813 (1970). For this reason the exception allowing an interlocutory injunction to restrain enforcement of rate orders is permitted by the Constitution.

A detailed summary procedure is outlined in Section 1192 of Title 45 of the Revised Statutes for judicial review of the Commission's orders. This legislation is entirely compatible with the last paragraph of Article VI, Section 5 of the Constitution. Nowhere in this legislation or in the last paragraph of Article VI, Section 5 is restraint of a Commission order authorized.

If any of the persons, mentioned in R.S. 45:1191, or other party in interest, shall be dissatisfied with any order entered by the commission, adopting, fixing, changing, altering, or modifying, any rate, classification, rule, charge, or general regulation, the dissatisfied person may, within three months after the order made by the commission becomes effective, file in a court at the domicile of the commission, a petition setting forth the particular cause of objection to the order or regulation of the commission complained of. All such cases shall be tried in the same manner as civil cases and shall be given precedence over all other civil cases in the court, and shall be heard and determined as speedily as possible. The Court may affirm the order of the commission complained of, or it may change, modify, alter, or set it aside, as justice may require. (La.R.S. 45:1192).

It should be kept in mind that the quoted Sections 1191 and 1192 were the general statements of law enacted by Act 171 of

1908. By this legislation there were no exceptions to the executory character of Commission orders. It was provided in the constitution of 1898, however, that "whenever any rate, order, charge, rule or regulation of the Commission is contested in court, * * * no fine or penalty for disobedience thereto, or disregard thereof, shall be incurred until after said contestation shall have been finally decided by the courts, and then only for acts subsequently committed." La.Const. Art. 286 (1898).

A similar provision in the Constitution of 1913 provided generally for the suspension of Commission orders during contestation in court. La.Const. Art. 285 (1913).

Thus the clear and unequivocal purpose of Article VI, Section 5 of the Constitution of 1921 was to abolish the concept of suspension of Commission orders while they were contested in Court. Except, however, that an injunction restraining execution of orders involving rates, fares, tolls and charges, only, was authorized where "irreparable damage or injury" was established. Therefore, except for the recognition that injunctions were allowed in rate cases, the Constitution of 1921 gave full effect and support to the general proposition stated in Sections 1191 and 1192 that orders of the Commission were executory during judicial review.

Moreover, the careful attention taken to limit the exception contained in Article VI,

Section 5 to orders affecting rates, fares, tolls and charges compels the application of the maxim "inclusio unius est exclusio alterius". Thus by permitting only orders affecting rates and charges to be enjoined, the fundamental law denied the right to enjoin other orders of the Commission.

In the instant case, jurisdiction is not denied by Central and there is no allegation that rank denial of a fundamental or constitutional right is involved. All that is alleged is "irreparable damage", but, as I have shown, compliance with the Commission's order will not result in irreparable damage. Furthermore, an allegation of irreparable damage is by explicit constitutional provision a basis for restraint of orders involving rates and charges—none other.

In my view the procedure adopted by Central is an effort to shortcut the procedure prescribed by Article VI, Section 5 of the Constitution and Sections 1191 and 1192 of Title 45 of the Revised Statutes. In permitting Central to avail itself of the injunction procedure in this case, the Court creates a right denied by the Constitution and statutes of this State. In so doing the court effectively reduces the Commission's power, the result of which may be, in future cases, to permit a utility to seriously impair the public interest pending judicial review of Commission orders.

I respectfully dissent.