352 So.2d 999 (1977)
SOUTH CENTRAL BELL TELEPHONE CO.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 59851.
Supreme Court of Louisiana.
November 14, 1977.
*1001 Norman C. Frost, M. Robert Sutherland, Birmingham, Ala., Ronald W. Tweedel, New Orleans, Victor A. Sachse, Jr., Victor A. Sachse, III, Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-appellant.
Jeff McHugh David, Gen. Counsel, Baton Rouge, Saul Stone, Michael R. Fontham, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for defendant-appellee.
MARCUS, Justice.
This is an appeal by South Central Bell Telephone Company, a wholly-owned subsidiary of American Telephone & Telegraph Company, from a judgment of the 19th Judicial District Court affirming an order of the Louisiana Public Service Commission which ordered South Central Bell to continue with expenditures sufficient for a full construction program to reduce the number of held applications of more than thirty days to zero by October 6, 1977 and to be in a position as of that date to provide service when and where requested in the grade desired.
In March 1973, the Commission ordered South Central Bell to complete by July 1, 1976 and $870 million statewide construction program to eliminate all eight-party lines, to afford single line service to all who desired it, and to raise the quality of service in Louisiana.[1] By June 30, 1976, South Central Bell had fully complied with the 1973 order and thereby achieved the standard of zero held applications.
On June 15, 1976, South Central Bell's application for an $89 million increase in intrastate rates was denied in full by the Commission based on findings that during the 1975 historical test year South Central Bell had realized an overall rate of return of 8.7% and a return on equity in the range of 10.5-11.5%.[2] Subsequent to this denial, the Commission received numerous complaints from consumers who were refused telephone service by the company based on representations of inadequate revenues. As a result, the Commission cited South Central Bell to show cause on September 24, 1976 "why an order should not be issued by the Louisiana Public Service Commission requiring that South Central Bell Telephone Company continue to maintain and provide reasonable and adequate telephone service to Louisiana telephone subscribers," or, in the absence of providing said service, why it should not be held in contempt under La.R.S. 45:1186 and responsible for monetary damages as provided in La.R.S. 45:1196, et seq. A hearing was conducted on September 24 during which twenty-eight individuals testified as to the company's refusal to provide telephone service to them. Appearing at the hearing on behalf of South Central Bell were Murray C. Fincher, vice-president, and David E. Buck, chief engineer, of the Louisiana operations of the company. Their testimony was to the effect that telephone service had been provided by the company when and where requested during the first six months of 1976 (about 54,000 telephone connections each month); however, the ability of the company to continue such service would be greatly curtailed as a result of the Commission's denial of its application for a rate increase. As of September 1, 1976, South Central Bell had accumulated only 2,735 held applications; however, it was estimated that by the end of 1976, unfilled applications for telephone service would reach 4,600 and would increase to 14,000 to 15,000 by mid-1977, absent rate relief, as inadequate revenues would result in the company being unable to raise equity capital to provide full service.
On October 6, 1976, the Commission issued an order directing South Central Bell to provide full and adequate telephone service by providing telephones to all persons who testified before the Commission within thirty days and by reducing the number of held applications in Louisiana to zero by December 31, 1976. The order further provided that, in the event of telephone applications *1002 requiring an unusually large capital investment or other extraordinary circumstances, South Central Bell could apply to the Commission for relief from the order or an extension of time for filing such application. The order was enforceable pursuant to any remedy provided by Louisiana law, including the award of damages to individuals if appropriate.[3]
On October 20, 1976, South Central Bell filed in the district court a petition seeking judicial review of the Commission's order[4] and a permanent injunction to prevent its enforcement.[5] Subsequently, the company amended its petition by requesting the issuance of a preliminary injunction pending disposition of its request for a permanent injunction. South Central Bell contended that the Commission's order was arbitrary, unreasonable and discriminatory in that the citation directed to the company did not give sufficient notice of the action contemplated by the Commission; the company was physically unable to achieve zero held applications by December 31, 1976; the Commission had not adopted rules prescribing standards for service adequacy for telephone companies in Louisiana; and the standard of zero held applications imposed in the order was not included in the model standards adopted by the National Association of Regulatory Utility Commissioners.[6]
A hearing was held on December 6-7 at which Murray C. Fincher, D. M. Ballard, Daniel Matheson and Eugene W. Meyer testified on behalf of South Central Bell and Bruce M. Louiselle testified for the Commission. The witnesses on behalf of South Central Bell testified as to the company's physical and financial inability to comply with the order of the Commission. The Commission objected to the introduction of evidence relative to the company's financial status on the ground that it had no bearing on the reasonableness of the service order; rather, it was argued that such evidence should be confined to the rate case under review in a separate proceeding in the district court. However, the trial judge overruled the objection and the evidence was received.
On December 27, 1976, the district court issued a preliminary injunction enjoining the Commission from enforcing the order of October 6, 1976 (No. U-13141) and, pursuant to La.R.S. 45:1194, sent the transcript of Murray C. Fincher's testimony to the Commission. The court's decision to issue a preliminary injunction was based on the fact that the order of the Commission contained no definition of "held applications" and the testimony of Fincher indicated that a considerable amount of time and manpower would be needed to comply with the order.[7] The court deferred action on the merits of South Central Bell's application for a permanent injunction and judicial review of the order until the Commission had considered the evidence and reported its action to the court. La.R.S. 45:1194.
On December 30, 1976, after review of the case on remand from the district court, the Commission amended its previous order by extending the date for compliance to *1003 October 6, 1977, one year after the issuance of its original order. South Central Bell was ordered to continue with expenditures sufficient for a full construction program to reduce the number of held applications of more than thirty days in any base rate area in the state to zero by October 6, 1977, and the number of held applications for telephone service of more than thirty days outside the base rate areas to zero, with the exception of those applications for service in which the Commission consented to a longer delay pursuant to an application for relief filed by South Central Bell in exceptional cases. The order stated that the Commission would not accept as a conclusive basis for a delay longer than thirty days the mere claim of financial inability or the projection of South Central Bell that it would not earn a rate of return it deemed sufficient. However, with regard to particular service applications, an extraordinarily small projected return in relation to the necessary investment was to be considered by the Commission as to whether the expenditure was required under sound regulatory principles. Finally, South Central Bell was ordered to be in a position as of October 6, 1977 to provide service when and where requested in the grade desired, the status which it had achieved as of June 30, 1976.[8]
After return of the record to the district court, the district court affirmed the Commission's order as amended concluding that it was not arbitrary, unreasonable or capricious and that the general notice directed to South Central Bell was sufficient to support the order. The court further found that the model standards of the National Association of Regulatory Utility Commissioners were not binding on the Commission, and, even if they were, it was uncertain whether the order was more or less onerous than the model standards. Finally, the court found that the service standard adopted by the Commission was not discriminatory. South Central Bell took a devolutive appeal from this judgment.[9] La.Const. art. 4, § 21(E).
La.Const. art. 4, § 21(B) provides that the Louisiana Public Service Commission "shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law." Under La.R.S. 45:1164, the power, authority and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by public utilities except in the Parish of Orleans and other exceptions set forth in the statute. The Commission shall adopt all reasonable and just rules, regulations and orders affecting or connected with the service and operation of a telephone or telegraph business. La.R.S. 45:1166(A). Pursuant to these provisions, the Commission has broad power to regulate the service of telephone utilities and its power is sufficiently broad to include the adjustment of telephone service to customer needs. See Louisiana Power & Light Company v. Louisiana Public Service Commission, 256 La. 656, 237 So.2d 673 (1970). According to the settled jurisprudence of this court, the orders of the Louisiana Public Service Commission must be accorded great weight and will not be overturned unless shown to be arbitrary, capricious or abusive of the Commission's power. Louisiana Oilfield Carriers Association, Inc. v. Louisiana Public Service Commission, 281 So.2d 698 (La.1973); Central Louisiana Telephone Co. v. Louisiana Public Service Commission, 262 La. 819, 264 So.2d 905 (1972); Louisiana Power & Light Company v. Louisiana Public Service Commission, supra; *1004 Arkansas & Louisiana Missouri Railway Company v. Louisiana Public Service Commission, 251 La. 963, 207 So.2d 760 (1968).
The primary contention raised by South Central Bell is that the district court erred in affirming the December 30 order of the Commission which imposed on the company a standard of zero held applications and regrade requests by October 6, 1977 in that such order was arbitrary and unreasonable in view of the fact that the Commission had never adopted a general standard for held applications for utilities subject to its regulation; the National Association of Regulatory Utility Commissioners had not proposed a standard of zero held applications in its Model Communications Service Rules;[10] and the evidence established that the company did not have sufficient materials, manpower and capital to comply with the order by the October 6, 1977 deadline.
At the hearing before the district court (December 6-7, 1976) on the issue of the validity of the Commission's original order (No. U-13141) which fixed December 31, 1976 as the date for compliance with the standard, South Central Bell presented the testimony of Murray C. Fincher, D. M. Ballard, Daniel Matheson and Eugene W. Meyer.
Murray C. Fincher, vice-president in charge of the Louisiana operations of South Central Bell, testified that the company was unable to achieve the standard of zero held applications as ordered by the Commission by the December 31 deadline because the company could not supply the materials, manpower and capital necessary for the achievement of this standard within the time period ordered by the Commission. His testimony covered the specific needs of central office equipment and outside plant as well as the cost, time and manpower required to complete the projects. Fincher also testified with respect to the amount of capital needed to finance the construction program. He estimated an expenditure of $20 million in excess of the $244 million which South Central Bell had spent in 1976 would be required and projected a $288 million capital expenditure for the construction program in 1977. However, he emphasized that, absent rate relief, South Central Bell's earnings in 1976 would not be sufficient to attract the amount of capital necessary for the construction program. Therefore, the company would not spend the $288 million in 1977 for the construction program but would spend only $190 to $200 million. As a result, adequate service to Louisiana consumers would not be provided and the number of unfilled applications for telephone service would increase. On cross-examination, Fincher admitted that South Central Bell had achieved the service standard of zero held applications by June 30, 1976.
D. M. Ballard, assistant chief accountant of South Central Bell, testified that South Central Bell maintains its books in accordance with the approved system of accounting and based on these records, he concluded that the rate of return on equity in Louisiana had steadily declined from 9.54% in 1973 to 7.14% in the third quarter of 1976, despite periodic rate increases accorded by the Commission.
Daniel Matheson, vice-president in the revenue requirements department of South Central Bell, testified that sufficient capital resources would not be available to South Central Bell to enable it to provide adequate telephone service in Louisiana under the rate structure authorized by the Commission. The lack of capital resources was attributed to the fact that the return on equity of about 8% in 1976 was too low to attract investors and would further decline in 1977. Moreover, the company had experienced *1005 a decline in its earnings-interest ratio in recent years. Reduction of interest coverage would ultimately lead to a downgrading of South Central Bell's obligations which are presently rated AAA by major bond agencies. This would adversely affect the company's ability to obtain needed funds and increase their cost. On cross-examination, Matheson acknowledged that AT&T, the primary entity which raises equity capital for the Bell System, had never denied South Central Bell's request for capital where it considered that its subsidiary's earnings were progressing so as to justify its commitment. He explained that AT&T raises equity capital by the issuance of shares of its stock on the open market which stock was presently selling about 17% above book value. In 1975, AT&T's return on equity was 9.8% which figure had risen to 12% in the last quarter of 1976.
Eugene W. Meyer, vice-president and director of the utility corporate finance department of Kidder Peabody and Company, Inc., expressed an opinion that a utility which was allegedly similar financially to South Central Bell and which was required in 1977 to undertake a $289 million construction program of which $144 million must be externally financed could not attract sufficient debt and/or equity capital to finance that portion of the 1977 construction program which had to be raised from outside investors.
Bruce M. Louiselle, vice-president of David A. Kosh & Associates, a firm of public utility consultants, testified on behalf of the Commission. He expressed an opinion that a telephone company financially similar to South Central Bell which was required to implement a $259 million construction program of which $144 million must be externally financed could attract the required outside capital on reasonable terms to finance such a construction program. He stated that potential sources of capital available to South Central Bell were long and short term debt capital and equity capital which could be obtained through AT&T. His opinion was based on findings by the Commission relative to the financial condition of South Central Bell in a recent rate hearing denying South Central Bell's application for an $89 million increase in intrastate rates.[11]
After a careful review of the record, we conclude that the Commission's order dated December 30, 1976 was not arbitrary or unreasonable in directing South Central Bell to achieve the standard of zero held applications and regrade requests by October 6, 1977. At the outset, it should be observed that the Commission has not adopted the Model Communications Service Rules of the National Association of Regulatory Utility Commissioners and therefore is not bound by them. But, even if it were, an examination of those rules creates uncertainty as to whether or not they impose a more onerous standard for held applications than that ordered by the Commission in view of the fact that the model rules suggested that 85 to 90% of a utility's regular service order installations be completed within five working days of the receipt of the application for service. The Commission's order relative to regrade requests is similar to that set forth in the model rules, i. e., a regrade order normally should be filled no later than thirty days after the customer has made application for a different grade of service.
Pursuant to constitutional and statutory provisions, the Commission is given broad power to regulate the service of telephone utilities and may adopt all reasonable and just rules, regulations and orders affecting or connected with the service or operation of such business. La.Const. art. 4, § 21(B); La.R.S. 45:1164, 1166. The standard of zero held applications and regrade requests imposed by the Commission in its December 30 order was the same standard mandated by the Commission in 1973 and actually achieved by South Central Bell as of June 30, 1976. Moreover, the order directed South Central Bell to correct service deficiencies which had arisen within a period of only three to six months of the order. We *1006 are satisfied from the evidence that adequate sources of capital were available to South Central Bell from which it could derive the necessary funds to implement the order of the Commission. South Central Bell's bonds were rated AAA thereby assuring the company the widest access to the monetary market at the lowest cost, and equity capital was available to South Central Bell through AT&T. Furthermore, South Central Bell's contention that it was unable to comply with the Commission's order since it could not supply within a short period of time the materials and labor necessary for achievement of the standard of zero held applications and regrade requests, as attested to by Fincher, loses its validity in view of the fact that the Commission in its December 30 order extended the date for South Central Bell's compliance from December 31, 1976 to October 6, 1977, a period of one year from the issuance of the Commission's original order and of seven months from the affirmance of the December 30 order by the district court. Clearly, South Central Bell had the financial and physical ability to comply with the December 30 service order of the Commission without any undue adverse effect on the operation of the company. However, should the expenditure necessary to implement this order adversely affect its earnings (return on equity), the appropriate proceeding by which the company may seek relief is the institution of a rate proceeding.[12] Accordingly, under these circumstances, we find that the order of the Commission was a reasonable and proper exercise of its regulatory power.
South Central Bell next contends that the district court erred by failing to transmit to the Commission for its consideration on remand of the case the transcript of the testimony of D. M. Ballard, Daniel Matheson and Eugene W. Meyer as required by La.R.S. 45:1194. The transcript of Murray C. Fincher's testimony was sent by the district court to the Commission on its request.
La.R.S. 45:1194 provides in pertinent part that if, upon the trial of any suit brought to contest an order of the Commission, the plaintiff introduces evidence which is found to be different from that offered upon the hearing before the Commission, or additional thereto, the court, before proceeding to render judgment, unless the parties to such action stipulate in writing to the contrary, shall send a transcript of such evidence to the Commission. The record of these proceedings in the district court seems to indicate that counsel for both parties contemplated a waiver of the requirement of submission to the Commission of the evidence presented to the district court. However, even in the absence of a waiver of the submission requirement, the district court's failure to send a transcript of the evidence to the Commission is of no moment. For the most part, the evidence presented by the witnesses had been received by the Commission in connection with its recent hearings on South Central Bell's application for a rate increase. Moreover, the evidence was received and considered by both the district court and this court in determining the reasonableness of the Commission's order. We therefore conclude that the district court did not commit reversible error under the circumstances here presented.
Finally, South Central Bell contends that the district court erred in affirming the Commission's imposition of a standard of zero held regrade requests in its order dated December 30, 1976, since South Central Bell was not given notice or an opportunity to present evidence on the standard either before the Commission or the district court. The citation ordered South Central Bell to show cause on September 24, 1976, why an order should not be issued by the Commission "requiring that South Central Bell Telephone Company continue to maintain and provide reasonable and adequate telephone service to Louisiana telephone subscribers. . . ." This citation afforded *1007 adequate notice to South Central Bell that any aspect of the provision of reasonable and adequate telephone service, including the elimination of held regrade requests, was within the scope of the Commission's inquiry at the September 24 hearing. Hence, we find no merit in this contention.
For the foregoing reasons, we conclude that the order of the Commission dated December 30, 1976 was a reasonable and proper exercise of the regulatory power of the Commission. Accordingly, the district court did not err in affirming the order.

DECREE
For the reasons assigned, the judgment of the district court is affirmed.
SUMMERS, J., concurs in result.
NOTES
[1] Ex Parte South Central Bell Telephone Co., 98 PUR.3d 185 (La.Pub.Serv.Comm., 1973).
[2] Ex Parte South Central Bell Telephone Co., 15 P.U.R. 4th 87 (La.Pub.Serv.Comm., 1976).
[3] Order No. U-13141.
[4] La.Const. art. 4, § 21(E); La.R.S. 45:1192.
[5] South Central Bell Telephone Co. v. La. Public Service Commission, 352 So.2d 964 No. 196,534, 19th Jud.Dist.Ct., Division I, Parish of East Baton Rouge, State of Louisiana.
[6] In its petition, South Central Bell stated that, since it had served all of the individuals who appeared before the Commission at the September 24 hearing or had explained the circumstances which rendered such service impossible in certain cases in accordance with the order of the Commission, that portion of the order was not challenged.
[7] The Commission applied to this court for supervisory writs asserting error in the district court's issuance of a preliminary injunction based on Fincher's testimony as to the difficulty of compliance with the order. The Commission contended that the issuance of the preliminary injunction based on this testimony prior to its consideration by the Commission on remand was improper. However, this court denied the application as moot after the Commission on December 30 modified its previous order of October 6 by extending the deadline for compliance from December 31, 1976 to October 6, 1977. South Central Bell Telephone Co. v. La. Public Service Commission, 341 So.2d 1124 (La. 1977).
[8] Order No. U-13141-A.
[9] In a letter dated October 3, 1977, the Commission notified South Central Bell that it had granted its request for exceptions to Order U-13141 as amended by U-13141-A requiring held applications for telephone service and applications for regrades of service to be eliminated by October 6, 1977. However, exceptions were conditioned on the company commencing construction of the enumerated projects within thirty days.
[10] Rule 702.2(a) of the Model Communications Service Rules of the association provides that a suggested percentage of 85 to 90% of the utility's regular service order installations shall normally be completed within five working days, the intervals to commence with the receipt of the application unless a later date is requested by the applicant. Rule 702.2(b) requires that a regrade order normally be filled no later than thirty days after the customer has made application for a different grade of service except where the customer requests a later date.
[11] Ex Parte South Central Bell, 15 PUR 4th 87 (La.Pub.Serv.Comm., 1976).
[12] La.Const. art. 4, § 21(D)(2) provides that, within twelve months of the effective filing date of a proposed rate schedule which would result in a change of rates, the Commission shall render a full decision on each application, petition and proposed rate schedule.