**E.J. WILLHITE, d/b/a Willhite Air Conditioning, Plaintiff-Appellant,**

v.

**SOUTH CENTRAL BELL TELEPHONE CO., Defendant-Appellee.**

**No. 82–3293**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1982.

Bobby L. Culpepper, Jonesboro, La., for plaintiff-appellant.

Thompson, Sparks, Cudd & Dean, Wood T. Sparks, Monroe, La., for defendant-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

PER CURIAM:

This case arises out of a diversity action in which the plaintiff, E.J. Willhite, d/b/a Willhite Air Conditioning, sued South Central Bell Telephone Company ("South Central") to recover damages caused by the incorrect listing of his telephone number in a display advertisement in the 1979 yellow page section of the Jonesboro Telephone Directory. The plaintiff originally brought this action in state court, but the defendant obtained removal to the federal district court. South Central denied that it was negligent and specifically pleaded that its liability was limited by provisions in its contract with the plaintiff and in its General Subscriber Services Tariff on file and approved by the Louisiana Public Service Commission.

Following a bench trial, the district court ruled in favor of the defendant and found that South Central's liability was limited by the contract to the amount of the advertising charges, which amount had already been paid to the plaintiff. The court found further that even if Willhite had a cause of action in tort, the evidence did not prove that the defendant had been negligent. The court also found that the defendant's liability was limited by provisions in the tariff. We affirm.

On February 20, 1979, Willhite entered into a contract with South Central for yellow page advertising in the 1979 Jonesboro Telephone Directory. Willhite's phone number was 259–9575, but the number was incorrectly listed in the display advertisement of the yellow page section of the directory as 259–8575. Willhite's number was listed correctly in three other places in the directory.

After the directory was delivered in late May, 1979, Willhite called the phone company to report the incorrect number in the display advertisement. In response to Willhite's call, South Central placed an intercept operator on the incorrect number to direct anyone calling the number to Willhite's correct number. Willhite claims that he asked the phone company to assign him the incorrect number and that the phone company should have complied with his request. That number had been previously assigned, however, to a Mr. Dark as his residential number. Dark had contacted the phone company before the delivery of the 1979 directory and requested an unlisted number. The district court accepted the defendant's explanation that it could not give Willhite Dark's number without Dark's permission because it was also under an obligation to intercept Dark's number and properly handle his calls.

Because of this situation, South Central placed a double intercept on 259–8575. An operator would answer the number and ask whom the party was calling. If he was calling Dark, he would be informed that the number had been changed to an unlisted number. If the caller was trying to reach Willhite, he would be informed that Willhite's number was 259–9575. Plaintiff claims that the intercept procedure did not

work properly. He maintains that the procedure was also intercepting the correct number and advising callers that the number had either been disconnected or changed to a private listing. At other times, the caller would hear a phone ringing, but the phone would not ring at Willhite's place of business. Willhite contended at trial that he had suffered substantial business losses resulting from the incorrect listing and from the defendant's failure to correct the problem promptly. Willhite's number was listed without error in the 1980 directory.

■ The district court correctly held that the plaintiff's claim for breach of contract against the defendant was governed by the contract which the plaintiff signed on February 20, 1979. *See* La.Civ.Code Ann. art. 1901 (West 1977).[1] The contract contained the following provision limiting South Central's liability to the amount that it had charged for the incorrect advertisement:

> The liability of the Telephone Company, or any. person or firm soliciting advertising for it, on account of errors in or omissions of the advertising described on the reverse side, or advertising, changes or deletions subsequently ordered by the applicant by telephone or otherwise, shall in no event exceed the amount of charges for the advertising which was omitted or in which the error occurred in the then current directory issued, and such liability shall be discharged by an abatement of the charges for the particular listing or advertisement in which the omission or error occurred.

The Louisiana courts have consistently upheld such a limitation by the phone company on its liability for errors in directory advertisements. *Roll-up Shutters, Inc. v. South Central Bell Telephone Co.,* 394 So.2d 796 (La.App.), *writ refused,* 399 So.2d 599 (La.1981); *Marino v. South Central Telephone Co.,* 376 So.2d 1311 (La.App.1979); *Wilson v. Southern Bell Telephone and Telegraph Co.,* 194 So.2d 739 (La.App.1967). Since the limitation was valid, the defendant owed the plaintiff nothing under the contract as it had already given the plaintiff an abatement in charges for the incorrect advertisement.

In its defense against the plaintiff's claim of negligence, South Central contended that it was not negligent and that even if it was, its liability was limited by section A2.5 of the tariff on file and approved by the Louisiana Public Service Commission.[2] Plaintiff cites a number of cases in which the Louisiana courts have awarded damages for the phone company's negligence in incorrectly listing phone numbers in the directory. *See Butcher v. South Central Bell Telephone Co.,* 398 So.2d 197 (La.App.1981); *Bunch v. South Central Bell Telephone Co.,* 356 So.2d 104 (La.App.1978); *Falcon v. South Central Bell Telephone Co.,* 327 So.2d 631 (La.App. 1976). The district court, however, never denied that the plaintiff might have had an action in tort against the defendant. It found instead that the defendant had not been negligent in its implementation of the double intercept procedure.

■ After reviewing the record, we have concluded that we must affirm the district court's finding that the defendant was not negligent as that finding is not clearly erroneous. Fed.R.Civ.P. 52(a). The district court recognized that South Central owed a duty to Dark as well as to Willhite and that its adoption of the double intercept procedure was the only feasible solution to both

---

1. Article 1901 provides: "Agreements legally entered into have the effect of laws on those who have formed them." La.Civ.Code Ann. art. 1901 (West 1977).

2. The relevant portion of the tariff reads:
The liability of the Company for damages arising out of mistakes, omissions, interruptions, delays, errors or defects in transmission, or failures or defects in facilities furnished by the Company, occurring in the course of furnishing service or other facilities and not caused by the negligence of the subscriber, or of the Company in failing to maintain proper standards of maintenance and operation and to exercise reasonable supervision shall in no event exceed an amount equivalent to the proportionate charge to the subscriber for the period of service during which such mistake, omission, interruption, delay, error or defect in transmission or defect or failure in facilities occurs.

men's needs for adequate phone service. South Central authorized the procedure within forty-eight hours after it was notified of the problem. Further, there is evidence in the record to support the trial court's finding that "any time a 'breakdown' in the double intercept procedure occurred, South Central Bell attended to it as quickly as possible, and after August, 1979, no problems occurred in the double intercept procedure." Record at 119.

Since we have affirmed the trial court's finding concerning negligence, we need not decide whether South Central's liability was effectively limited by the provision in the tariff. We note, however, as did the district court, that although there has been no Louisiana case involving the application of this provision limiting liability, similar tariff provisions have been upheld in other jurisdictions as long as the phone company's conduct was not willful or wanton. *See, e.g., McTighe v. New England Telephone & Telegraph Co.,* 216 F.2d 26 (2nd Cir.1954); *Pilot Industries v. Southern Bell Telephone & Telegraph Co.,* 495 F.Supp. 356 (D.S.C. 1979); *Holman v. Southwestern Bell Telephone Co.,* 358 F.Supp. 727 (D.Kan.1973); *Wilkinson v. New England Telephone & Telegraph Co.,* 327 Mass. 132, 97 N.E.2d 413 (1951); *Warner v. Southwestern Bell Telephone Co.,* 428 S.W.2d 596 (Mo.1968). Furthermore, the Louisiana courts have upheld the validity of a similar limitation on liability contained in a Western Union tariff filed with the Federal Communications Commission. *Crowley Industrial Bag Co. v. Western Union Co.,* 204 So.2d 725 (La.App.1967), *writ refused,* 251 La. 859, 206 So.2d 711 (1968); *see also Western Union Telegraph Co. v. Nester,* 309 U.S. 582, 60 S.Ct. 769, 84 L.Ed. 960 (1940); *Western Union Telegraph Co. v. Priester,* 276 U.S. 252, 48 S.Ct. 234, 72 L.Ed. 555 (1928); *Western Union Telegraph Co. v. Esteve Brothers & Co.,* 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921); *cf. Carter v. American Telephone and Telegraph Co.,* 365 F.2d 486, 496 (5th Cir.1966) (In holding that the district court properly referred the question of the validity of a phone company tariff to the FCC, we stated that "a tariff required by law to be filed is not a mere contract. It is the law.").

Since we find no error in the district court's findings, the judgment for the defendant is affirmed. The plaintiff shall bear the costs of this appeal.

AFFIRMED.