455 So.2d 694 (1984)
PEACOCK'S, INC., et al, Plaintiffs-Appellants,
v.
SOUTH CENTRAL BELL, et al, Defendants-Appellees.
No. 16329-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*695 Lunn, Irion, Switzer, Johnson & Salley by Jack E. Carlisle, Jr., Shreveport, for G & G, Inc. d/b/a Peacock's, Inc.
Blanchard, Walker, O'Quinn & Roberts by Roy S. Payne, Shreveport, for St. Paul Fire & Marine Ins. Co.
Tucker, Jeter & Jackson by T. Haller Jackson, III, Shreveport, for South Cent. Bell.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for American Intern. Sec. d/b/a Shreveport Alarm Co., Inc.
*696 Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for Potter Elec. Signal Co.
Nelson & Achee by Roland Achee, Shreveport, for J.J. Gumberg.
Before PRICE, JASPER E. JONES and NORRIS, JJ.
PRICE, Judge.
This case arises from the burglary of a jewelry store owned by plaintiff G & F, Inc. d/b/a Peacock's Jewelers (Peacock's) located in Shreve City Shopping Center in Shreveport, Louisiana. Peacock's is joined as plaintiff by its insurer, St. Paul Fire & Marine Insurance Co., which had paid $401,405.05 of the almost $2,000,000 loss suffered in the burglary at the time suit was filed. Defendants are South Central Bell Telephone Company and other companies associated with the store's alarm system and security of the building in which Peacock's was located. This appeal is solely concerned with the granting of a partial summary judgment in favor of Bell.
The burglary occurred during the late morning hours of Sunday, December 12, 1982. The door to the equipment room containing the telephone connections for the shopping center had been left unlocked for some time before the burglary because the lock was broken. The special telephone circuit connecting the jewelry store, along with other retail establishments in the shopping center, with Shreveport Alarm Company was located in this room. These circuits had been tagged by Bell employees to identify them according to the retail establishment and the alarm company.
The burglars entered the equipment room, identified the circuit for Peacock's alarm system, disabled the system, and removed merchandise from the store undetected. Plaintiffs contend Bell should be held liable for negligence in failing to notify Peacock's of the broken lock and for clearly identifying the circuit connecting the store's alarm system. Bell filed a motion for summary judgment, contending first that there was no negligence on the part of its employees and, second, that even if negligence could be established, its liability is limited to the proportionate charge for service for the period during which the circuit was disabled. This contention is predicated upon the provisions of the Telephone Company Regulations approved and adopted by the Louisiana Public Service Commission, specifically the Private Line Services Tariff C2.1.3.
The trial court granted a partial summary judgment in favor of Bell, holding that the tariff is applicable to the instant situation and that the phone company's liability for ordinary negligence, if any, is limited as per the tariff. Liability for willful misconduct is not limited by the tariff and plaintiffs amended their petition to allege such misconduct, but the trial court found the affidavits submitted by Bell established that there was no willful misconduct by the company's employees in connection with this incident. He therefore dismissed all claims against Bell, with the exception of a claim for the limited damages for any ordinary negligence. Plaintiff appeals this judgment, contending the phone company tariff is inapplicable and, alternatively, that summary judgment was improper because there is a genuine issue of fact as to the willfulness of defendant's misconduct.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law. La.C.C.P. Art. 966. The motion for summary judgment must be granted when reasonable minds must inevitably conclude that the mover is entitled to judgment based on the facts before the court. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La. 1980).
The tariff relied upon by Bell defines private line service as the furnishing of company facilities for communication between specified locations 24 hours daily seven days per week. It further provides in Section C2.1.3:

*697 (A) The Telephone Company's liability, if any, for its willful misconduct is not limited by this tariff. With respect to any other claim or suit, by a customer or by any others, for damages associated with the installation, provision, termination, maintenance, repair, or restoration of service, and subject to the provisions of (B) through (G) following, the Telephone Company's liability, if any, shall not exceed an amount equal to the proportionate charge for the service for the period during which the service was affected. This liability shall be in addition to any amounts that may otherwise be due the customer under this tariff as an allowance for interruptions.
Thus, the issues for our disposition are whether this provision of the tariff should be applied to this particular occurrence and, if so, whether willful misconduct on the part of Bell employees negates the limitation of liability.
Plaintiffs insist that the tariff was not intended to apply to the factual circumstances present here. We must disagree. The definition of private line servicefurnishing of company facilities for communication between specified locations 24 hours daily seven days per weekclearly encompasses the type of service involved in providing the constant connection desired in maintaining an alarm system. Plaintiffs' claim against Bell is based on their contention that the conduct of its employees enabled the burglars to disengage the alarm system and escape immediate detection.
The tariff limits Bell's liability for damages associated with, among other things, maintenance or termination of service. The affidavits presented by Bell establish that tagging of the lines was for the purpose of keeping telephone workmen from attaching to or interrupting the special circuits provided for alarm systems while repairing other lines. We are of the opinion that identification of the lines is directly linked to maintaining service and thus falls within the purview of the tariff. Furthermore, since plaintiffs contend Bell's failure to inform Peacock's of the unlocked door affected the integrity of the alarm system, we find that this claim is also sufficiently directly connected with maintenance of private line service to fit within the meaning of the wording of the tariff.[1] We therefore conclude that plaintiffs' claim for damages is predicated upon acts or omissions sufficiently associated with the maintenance of private line service to fall within the intended application of the tariff.
Having determined that the tariff finds application to plaintiffs' claim, the next inquiry is whether the limitation of liability is valid. Plaintiffs contend such a limitation is contrary to public policy. Article IV, Section 21(B) of the Louisiana Constitution of 1974 empowers the state Public Service Commission to regulate all common carriers and public utilities and requires that the commission adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties. The commission shall exercise all necessary power and authority over any local public utility for the purpose of fixing and regulating the rates charged or to be charged by and services furnished by such public utility. La.R.S. 45:1163. The power, authority, and duties of the commission shall affect and include all matters and things connected with, concerning and growing out of the service to be given or rendered by such public utility. La.R.S. 45:1164. Thus, with respect to intrastate communications, the Louisiana Public Service Commission is endowed with authority to approve and adopt any necessary and reasonable regulatory tariffs and orders affecting or connected with service or operation of telephone utilities. See South Central Bell Telephone Co. v. Louisiana Public *698 Service Commission, 352 So.2d 999 (La. 1977).
It has been held that regulatory tariffs, required by law to be filed with an administrative commission, do not merely constitute a contract but have the force and effect of laws. Carter v. American Telephone & Telegraph Co., 365 F.2d 486, at p. 496 (5th Cir.1966), U.S. Cert. denied 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). The tariffs referred to include a statement of services available, equipment available, and the rules and regulations which govern the relations between a telephone company and the user of its services, in addition to the rates charged for services rendered. See 74 Am.Jur.2d Telecommunications, Section 26.
The validity of this particular tariff appears to be res nova. However, similar limitations of liability by the phone company in situations primarily involving directory listings have been upheld by Louisiana courts. In those cases, it was found that a contractual clause limiting the telephone utility's liability for errors or omissions was reasonable and valid, and did not contravene good morals or public policy. See Roll-Up Shutters, Inc. v. South Central Bell Tel. Co., 394 So.2d 796 (La.App. 4th Cir.1981), writ denied 399 So.2d 599 (La. 1981), and cases cited therein. Similar clauses limiting liability in contracts between burglar alarm protection companies and retail establishments have been found enforceable and not violative of public policy. See Lazybug Shops, Inc. v. American Dist. Telegraph Co., 374 So.2d 183 (La. App. 4th Cir.1979), writ denied 376 So.2d 1271 (La.1979); Alan Abis, Inc. v. Burns Electronic Security Services, Inc., 283 So.2d 822 (La.App. 2d Cir.1973).
A tariff filed by Western Union with the Federal Communications Commission limiting the telegraph company's liability for errors and omissions in the transmission of messages was given effect in Crowley Industrial Bag Co. v. Western Union Co., 204 So.2d 725 (La.App. 3d Cir.1967), writ refused 251 La. 859, 206 So.2d 711 (1968). This case was noted in Willhite v. South Central Bell Tel. Co., 693 F.2d 340 (5th Cir.1982). While the dispute in Willhite was resolved on the ground that the phone company was not negligent, the court in dicta cited various cases in which tariffs limiting the phone company's liability for negligence have been upheld in its rendering of services, as well as Crowley Industrial Bag Co., supra, and other cases enforcing the Western Union tariff, implying a general validity of such exculpatory tariffs.
The general public as a whole would bear the burden if unlimited liability is placed upon a public utility for every service it provides to the individual. The potential liability would be enormous if the telephone company were required to virtually burglar-proof the lines it provides to connect alarm systems. We therefore cannot say that a limitation of that liability is unreasonable, nor that it violates public policy. In light of the jurisprudence upholding other similar tariffs and contractual clauses, and the conclusion that the tariff is a reasonable measure for the protection of the general public, the limitation of liability will be enforced here.
The final question is whether the trial court erred in holding the pleadings and affidavits showed no willful misconduct by Bell employees, thus leaving no genuine issue of material fact. Plaintiffs contend the tariff does not insulate Bell from full liability for their damages because the conduct of its employees was willful.
The meaning of the terms "willful", "wanton", and "reckless" was considered in Cates v. Beauregard Electric Cooperative, Inc., 316 So.2d 907 (La.App. 3d Cir. 1975), wherein the court stated:
... The usual meaning assigned to do (sic) the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a *699 willingness that harm should follow. (citations omitted)
Willful has generally been given the same meaning in the law as intentionali.e., that the result which occurred was intended by the actor. Johnson v. Chicago Mill & Lumber Co., 385 So.2d 878 (La.App. 2d Cir.1980).
Black's Law Dictionary, Revised Fourth Edition, defines "willful" as follows:
Proceeding from a conscious motion of the will; voluntary.
Intractable; having a headstrong disposition to act by the rule of contradiction.
Intending the result which actually comes to pass; designed; intentional; not accidental or involuntary.
Conscious; knowing; done with stubborn purpose, but not with malice.
Premeditated; malicious; done with evil intent, or with a bad motive or purpose, or with indifference to the natural consequences; unlawful; without legal justification. (citations omitted)
Willfulness cannot exist without purpose or design. State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942).
Bell has admitted, through the affidavit of its Supervisor of Business Services in Shreveport, that it did tag the lines in the manner alleged by plaintiff, for the benefit of its own workmen so the special circuits would not be disconnected unless necessary. The affiant also attested that he was aware of the unlocked door and did not notify Peacock's, but did report it to someone with the firm responsible for management of the shopping center and Palais Royal, one of the neighboring stores. Peacock's counter affidavit in opposition to the motion for summary judgment simply reiterated that it was unaware of the broken lock and the tagging of the lines, and had the phone company informed its employees, steps would have been taken to repair the lock and to request removal of the tags.
We discern no factual dispute with regard to the character of defendant's actions. There is no apparent willingness on the part of defendant that a burglary should befall the jewelry store. The actions with respect to the door and the line tags were felt to be reasonable steps to take by defendant's employees. Their judgment may not have been entirely reasonable, but the acts complained of are not of such a purposeful character as to evidence a conscious design that this harm should befall plaintiff.
We therefore find the trial court was correct in finding no genuine issue of material fact and that Bell was entitled to a partial summary judgment with its liability for ordinary negligence limited to the extent provided in the tariff. The question of negligence vel non was properly deferred to a trial on the merits.
For the foregoing reasons, the judgment appealed is affirmed. All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
NOTES
[1] This finding is not to be construed as determination that Bell had a duty to inform Peacock's. It is based purely on the supposition that Bell was negligent with regard to the doorlock for the sole purpose of determining the applicability of the tariff in the context of the propriety of a summary judgment.